COLUMBIA PLACER COMPANY v. BUCYRUS STEAM SHOVEL &
DREDGE COMPANY and Another.[1]

JOHN McKINLEY v. SAME.

ROBERT J. ANDERSON v. SAME.

January 29, 1895.

Nos. 9173, 9174, 9175.

**Inveigling Defendants into Jurisdiction—Service of Summons.**

*Held,* that service of a summons upon a defendant who has been induced
to come within the jurisdiction of the court, for that purpose, by the fraud
of the plaintiff, confers no jurisdiction upon the court.

**Same—Evidence.**

Evidence considered, and *held* to establish the fact that the defendant's
general manager was induced to come into this state by the fraud of the
plaintiff, in order that the summons might be served upon him.

Appeal by defendants in each of the foregoing cases from an order
of the district court for Hennepin county, Elliott, J., denying a
motion of the defendants, appearing specially and for the purposes
of the motion only, to dismiss the action, and to vacate a temporary
injunction in the first-named action.    Reversed.

*F. F. Davis,* for appellants.

*Lawrence, Truesdale & Corriston,* for respondents.

START, C. J.    In each of these cases a motion was made on behalf
of the defendants to have the action dismissed for the reason that
no legal service of the summons had ever been made upon the de-
fendants, or either of them.    From the order of the district court
denying the motion, in all three cases, the defendants appealed to
this court.    The facts are identical in all of the cases, and the ap-
peals were argued as one, and so considered by this court.    Both
defendants are foreign corporations, and, at the time of the al-
leged service upon them, neither had any office or agent in the state
of Minnesota.    The plaintiff corporation is organized under the laws

[1] Reported in 62 N. W. 115.

of the state of Minnesota, and has its general offices at the city of Minneapolis. The other plaintiffs are citizens and residents of this state. On May 31, 1893, at said Minneapolis, the plaintiff corporation entered into a contract with the defendant Ohio corporation, whereby it undertook to build and furnish to the plaintiff corporation a certain dipper dredge and amalgamator, in accordance with certain specifications. Of the purchase price of the machine there had been paid prior to the commencement of this action, in cash and the negotiable promissory notes of the plaintiffs Anderson and McKinley, who were also interested in the contract, the sum of $16,000. The Ohio corporation assigned the contract to the Wisconsin corporation, which undertook to furnish the machine according to the contract. It did furnish a machine, and it was set up at the mine of the plaintiffs at Pasco, Washington; but, as claimed by the plaintiffs, it was defective, and not in accordance with the contract, while the defendants insisted that the plaintiffs should accept it. The differences between the parties were radical, and attempts to adjust them were made from time to time, without success, until about April 12, 1894, when the president of the plaintiff corporation visited Pasco, and found, as he says, that the machine did not and could not be made to fulfill the contract in any manner or way, without extensive changes and additions thereto, and that the plant would have to be remodeled and rebuilt. He returned to Minneapolis on April 27, and at once sent to W. B. Crittenden, who resided at Milwaukee, Wisconsin, and was the general manager of the defendants, a letter signed by him, in which he made no suggestion as to the result of his visit to and examination of the machine, but said, "It seems to me that we should have no difficulty in coming to an understanding, if we can arrange an interview," and invited him to come to Minneapolis for the purpose of such interview and settlement. Further correspondence followed, by mail and wire, with reference to the date of the proposed interview, with the result that Mr. Crittenden, in response to such invitation, came to Minneapolis on May 5, for the sole purpose of settling the controversy with plaintiff's president, and did then and there have an interview with him in reference thereto, continuing from 9 o'clock in the morning until 5 o'clock in the afternoon, and on the same day, and at the close of the interview, as claimed by Crittenden, the papers in the three

actions were served upon him as such general manager of the defendants. The papers so served were the summons, complaint, notice of motion, and restraining order of the court in each of the three cases. The complaint in each case had attached to it, as an exhibit, a copy of the contract and specifications, of which they were made a part. The summons and complaint, with but one copy of the exhibit, represent 45 pages of the printed record in this court, and if the exhibit in each case had also been printed the original papers in all of the cases would have represented over 60 pages of the printed record. Copies of all the originals were served. Other than as herein stated, service of the summons in these cases has never been made.

The defendants' motion is based upon the proposition that Crittenden was decoyed into this state by the plaintiff for the purpose of making such service upon him, and therefore the service should be set aside and the actions dismissed. If it is true that the plaintiffs induced Crittenden to come within the jurisdiction of the court for the purpose of serving him with the process of the court, it was a fraud and an abuse of such process, and it is the imperative duty of the court to set the service aside. The only question in the case then is, was he so induced to come into the state? If not, the motion was properly denied; for fraud, active or constructive, is a necessary element to be shown before the service can be set aside. We are of the opinion that the question must be answered in the affirmative. While fraud is never to be presumed, in the absence of evidence, yet when the defendants established the facts herein referred to, which are practically admitted, a clear and positive prima facie case of an attempted fraudulent service of process was made out, and the plaintiffs were bound to overcome it, not simply by a general denial of fraud and a general allegation of good faith, but by showing affirmatively their good faith in inducing the defendant's general manager to come within the jurisdiction of the court.

We do not wish to be understood as holding that where a defendant comes into the state, on the invitation of the plaintiff, to settle their controversies, he is exempt from service of process, as a nonresident party or witness attending court would be. We do, however, hold that such invitation carries with it an implied obligation

of good faith and fair treatment on the part of the person giving the invitation; and if he avails himself of the occasion of the defendant's presence in the state, in response to and induced by such invitation, to serve him (his guest, so to speak) with process, the service must be set aside, unless the plaintiff clearly establishes his good faith in the premises.

The affidavits on the part of the plaintiffs fail to explain away the inculpatory inferences necessarily to be drawn from the admitted facts of the case, if left unexplained.   Therefore the defendant's prima facie case remains unrebutted.   It will serve no practical purpose to analyze the evidence in detail, for the natural inferences to be drawn from the admitted facts, unexplained, cannot be made clearer by argument.   If these facts can be explained, the explanation is within the exclusive knowledge of the plaintiffs.   The inference that it was practically impossible to prepare in one office the papers in all three cases after the close of the interview between the parties, at 5 o'clock in the afternoon, procure from the court the restraining order, prepare copies of all the papers, and serve them on the day of the interview, and before the defendant's general manager left for his home, is not explained away by the plaintiffs.   The only explanation offered is that three copies of the contract had been prepared before the general manager arrived in Minneapolis.   This explanation only strengthens the inference that the service of the summons was fraudulent.   When and for what purpose were these copies prepared, if not with the intent, formed before the arrival of the general manager within the jurisdiction of the court, of expediting the commencement of the actions, and enabling the plaintiffs to make service of the summons, in case the invited interview proved abortive?   The plaintiffs know when and for what purpose these copies were prepared, yet they are silent.   Can any inference consistent with good faith on their part be drawn from their silence? Again, they say that "it was only after consultation with said Crittenden, and an effort, continued through several hours, to arrive at a fair and reasonable settlement, that affiant [plaintiff's president] ordered the papers in this case to be prepared."   After this order was given, was the consultation continued by the president for several hours more, for the purpose of preparing the papers, so as to serve them before the general manager could depart?   If so, it

was an act of bad faith. The plaintiffs only know the facts, and they are silent. It would have been an easy matter for them to have stated why the interview was continued after the order was given, and whether service was made immediately at the close of the interview, or at a time when they owed no duty to the general manager by reason of the implied obligation growing out of their letter of invitation. They leave these matters unexplained.

The stipulation of the attorneys for an extension of the time for the defendants to answer cannot be construed as a recognition of the jurisdiction of the court. The aid of the court was not invoked. It was simply a conditional arrangement pending the motion to dismiss.

Order reversed, and the cases remanded to the district court, with direction to dismiss them.